OPINION *Page 2 
{¶ 1} Appellant Lois Tanner ("Mother") appeals the August 31, 2007 Judgment Entry entered by the Tuscarawas County Court of Common Pleas, Juvenile Division, which terminated her parental rights, privileges and responsibilities with respect to her two minor daughters, Ashley and Aaliyah Orozco, and granted permanent custody of the girls to the Tuscarawas County Department of Jobs and Family Services (the department).
 STATEMENT OF THE CASE AND FACTS {¶ 2} On May 22, 2006, the department filed a Complaint, alleging Aaron Orozco (DOB 8/2/89), Ashley Orozco (DOB 7/20/92), and Aaliyah Orozco (DOB 2/24/97) were dependent children, and seeking temporary custody of the children. Following a Juv. R.6 Hearing, the trial court placed Aaron and Aaliyah in the custody of their father, Eldon Orozco ("Father"), under the protective supervision of the department. The trial court ordered Ashley be placed in the temporary custody of the department. At the Adjudicatory Hearing on July 12, 2006, the department moved to amend the Complaint with respect to an allegation regarding Father. The trial court granted the motion to amend. Thereafter, Father and Mother entered admissions to the Amended Complaint. The trial court adjudicated the children as dependent children, and ordered the status quo. The trial court also ordered the department to conduct a home study of Mother's residence in Warren County, and awarded Mother supervised visitation.
 {¶ 3} Father died on September 7, 2006. The following day, the trial court conducted an emergency hearing and placed Aaliyah in the same foster home as Ashley. Aaron was placed in the home of Cindy Franks. Mother moved for temporary *Page 3 
custody of the children, but the trial court denied her request. The trial court noted Mother had tested positive for marijuana and cocaine on August 9, 2006; had a history with Job and Family Services; a criminal background; and financial difficulties. Between September 8, 2006, and November 8, 2006, Mother had only visited the children on one occasion, and she had not participated in any case plan services.
 {¶ 4} On April 3, 2007, the department filed a Motion to Modify Disposition, asking the court to grant legal custody of Aaron to Cindy Franks, and grant permanent custody of Ashley and Aaliyah to the department. On August 2, 2007, the department moved to terminate permanent protective supervision over Aaron as he had reached the age of majority. The trial court conducted a hearing on the department's motion for permanent custody on August 23, 2007. Mother did not attend the hearing.
 {¶ 5} Rachelle Lynch, the coordinator of the supervised visitation program at Personal and Family Counseling, testified Mother had thirteen scheduled visits with the children. Mother had attended only eight of the visits, and was late four of those eight times. Mother cancelled five of the visits. Lynch's main concern during the visits was Mother's failure to engage Aaliyah. Mother usually brought her other daughter, Hannah, and that girl and Aaliyah usually entertained themselves. Lynch noted Mother had been receptive to all of her suggestions. Lynch acknowledged a bond between the children and Mother.
 {¶ 6} Beth McConaha testified during her early involvement with Ashley and Aaliyah, in 2006 the girls had not had contact with Mother since August, 2005. Mother informed McConaha she had tried to contact Father, but only had his work number and could not get ahold of him. McConaha discussed with Mother the services on her case *Page 4 
plan, which included a drug and alcohol evaluation and follow-up on all recommendations, submit to random drug screens, and undergo a psychological evaluation and follow all recommendations. A number of Mother's random drug screens came back positive for cocaine and marijuana. When McConaha discussed the positive drug screens with Mother, Mother acknowledged using marijuana approximately two times per week for the past twenty years. Mother did not know how the tests could show positive results for cocaine as she had not used the substance for three and a half years.
 {¶ 7} Although the case plan was adopted in August, 2006, Mother did not begin her drug and alcohol assessment until April, 2007. Mother completed her psychological evaluation in July, 2007. McConaha noted Mother did not attempt to comply with any of her case plan requirements until after the department had filed for permanent custody. With respect to Mother's home study McConaha stated Warren County did not recommend placement due to concerns regarding drug abuse, criminal history, children services history, and an inability to financially support the children. Mother told McConaha her criminal history was the result of being depressed and taking antidepressants which made her "do things". Mother's previous children services history included a complaint for neglect in December, 1997, as well as a complaint for neglect in December, 2002. Mother was the perpetrator in both instances. McConaha stated she spoke with Mother at least once a month during the course of the proceedings. When she would ask Mother about compliance with the case plan, Mother stated she was waiting for the worker from Warren County to set up the services. Another time, Mother claimed she lost the case plan and did not know if she could use *Page 5 
her medical card to complete the services, so she had not made the appointments. Mother did not execute releases until May, 2007.
 {¶ 8} McConaha stated Ashley and Aaliyah were currently in a foster home in Canton, Ohio, and the foster parents were willing to adopt the girls. Ashley expressed concerns if she was returned to Mother she would reengage in unruly activities. McConaha added Aaliyah had the stability she had not had for a long time as well as a feeling of permanency in the foster home. She concluded it was in the children's best interest to be placed in the permanent custody of the department. On cross-examination, McConaha explained the girls had a problem with stability since their birth as custody of the children had gone back and forth between Father and Mother.
 {¶ 9} Via Judgment Entry filed August 31, 2007, the trial court found Ashley and Aaliyah could not and should not be placed with Mother within a reasonable time despite diligent, reasonable efforts in planning by the department, and it was in the girls' best interest to grant permanent custody to the department.
 {¶ 10} It is from this judgment entry Mother appeals, raising as her sole assignment of error:
 {¶ 11} "I. THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY TO JOBS AND FAMILY SERVICES AS JOBS AND FAMILY SERVICES FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT SUCH WAS IN THE BEST INTERESTS OF THE CHILDREN."
 {¶ 12} This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.1(C). *Page 6 
 I {¶ 13} In her sole assignment of error, Mother maintains the trial court's finding it was in the best interest of the children to grant permanent custody to the Department was against the manifest weight of the evidence.
 {¶ 14} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. . Jeffries (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. CE. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 15} Furthermore, it is well-established "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." In reMauzy Children (Nov. 13, 2000), Stark App. No. 2000CA00244, quoting In reAwkal (1994), 95 Ohio App.3d 309, 316, 642 N.E.2d 424.
 {¶ 16} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care. *Page 7 
 {¶ 17} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 18} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 19} The trial court found the girls could not or should not be placed with Mother in a reasonable time. Mother did not appeal this finding. Mother's case plan required her to undergo a psychological assessment and follow all recommendations, *Page 8 
and undergo a drug and alcohol assessment and follow all recommendations. Mother did not begin to comply with these services until some eight months after the case plan was filed. In fact, Mother began services only after the department filed its motion for permanent custody on April 3, 2007. Mother was required to submit to random drug screens. She tested positive for cocaine and marijuana several times over the course of the proceeding. Warren County conducted a home study on Mother's home, and did not recommend placement of the children with her.
 {¶ 20} Ashley and Aaliyah are together in foster care and are doing well. Neither girl felt strongly about returning to Mother. Ashley was concerned she might return to her unruly ways if she lived with Mother. Mother only visited her daughters eight times over the course of two years.
 {¶ 21} Based upon the foregoing as well as the entire record in this matter, we find the trial court's findings it was in the best interest of Ashley and Aaliyah to grant permanent custody to the department is supported by clear and convincing evidence.
 {¶ 22} Mother's sole assignment of error is overruled. *Page 9 
 {¶ 23} The Judgment of the Tuscarawas Juvenile Division, is affirmed.
Hoffman, P.J., Wise, J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, The Judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to Appellant. *Page 1